UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>JAMES ROBERT DOWTY,<br><br>　　　　　　　Defendant. | CR. 16-50154-JLV<br><br>ORDER |

## INTRODUCTION

A jury convicted defendant James Robert Dowty of second degree murder and discharge of a firearm during a crime of violence. (Docket 72). Defendant filed post-trial motions. (Dockets 101 & 103). One motion seeks a judgment of acquittal under Rule 29(c) of the Federal Rules of Criminal Procedure or, in the alternative, a new trial under Rule 33(a). (Docket 101). The other motion requests a new trial pursuant to Rule 33(a) on additional grounds. (Docket 103).

## TRIAL EVIDENCE

The court limits its recitation to those facts necessary to resolve defendant's pending motions. In the subsequent legal analysis, the court includes additional facts as needed. The court relies primarily on the trial transcripts, (Dockets 87-91),[1] as well as its recollection of the evidence presented at trial.

---

[1] For the purpose of resolving defendant's motions, the court must cite to the sealed transcripts for this case. Unsealed transcripts, which are redacted, are also available. (Dockets 107-111).

During the early morning hours of July 20, 2016, 13-year-old T.C. was shot and killed while walking along a street in Pine Ridge, South Dakota. She was walking with three friends: R.O., age 15; Donovan Youngman, age 19; and A.R.C., age 17.[2]

R.O. testified at trial. She stated shortly after midnight she drank alcohol with T.C., A.R.C. and Youngman. (Docket 88 at pp. 6-11). T.C. and R.O. smoked marijuana. Id. Mucinex and Robitussin were in R.O.'s possession, and she consumed some of the Robitussin. Id. at pp. 17, 43. R.O. testified the four of them left the last location at which they drank and began walking along a street in Pine Ridge. Id. at pp. 15-19. On the general lighting of the area, R.O. testified, "[i]t wasn't pitch black. You could see because of the street lights." Id. at pp. 18-19. As the group walked, R.O. observed someone walking ahead of them in their direction. Id. at pp. 19-21. The group made a turn by cutting a corner, and the person R.O. noticed turned that direction as well and continued ahead of the group. Id. R.O. noticed the person wore red shoes. Id. at p. 41.

R.O. testified the person she noticed was James Dowty. Id. at pp. 20-23. She explained she knew it was defendant because they are related and she had seen him around town. Id. She testified she "saw his face." Id. at p. 21. T.C. asked R.O. whether the person was defendant's brother, "Joe Joe," someone they drank with on a prior occasion, but R.O. told her the person was defendant and

---

[2]During their trial testimony, these witnesses indicated their ages at that time as set forth here. (Docket 88 at pp. 4, 70-71, 112). Because trial occurred in May 2017, and T.C.'s death occurred in July 2016, the witnesses were likely one year younger than these ages when the incident happened.

2

not Joe Joe.  Id. at pp. 21-23.  R.O. testified she knew the difference between defendant and Joe Joe, specifying Joe Joe is smaller than defendant.  Id. at p. 40.  She stated at trial she was "certain" it was defendant and not Joe Joe. Id. at p. 67.  R.O. did not provide a clear in-court identification of defendant. Id. at pp. 24-25.  But she did testify that a photograph of defendant admitted into evidence was him, the person she witnessed shoot T.C.  Id. at pp. 28-31.

According to R.O., Youngman and A.R.C. skipped rocks in defendant's direction without hitting him.  Id. at pp. 22-23, 30.  R.O. testified defendant turned around once, facing the group, then put his back to them before turning around again, holding out a gun and firing a shot at them that hit T.C.  Id. at pp. 28-31.  R.O. stated she was "certain" defendant is the person who shot T.C. and that she recognized him before he pulled the trigger.  Id. at pp. 40-41.  R.O. testified defendant continued walking away after he fired the gun.  Id. at p. 37. Defense counsel cross-examined R.O. after the government's direct examination and after the redirect examination.  Id. at pp. 41-61, 68-69.

Youngman also testified at trial, and his recollection mirrored R.O.'s. Before the gunshot, he noticed the shooter's "[r]ed and white" shoes.  Id. at p. 77.  Youngman testified A.R.C. threw a "regular"-sized rock in the shooter's direction without hitting him.  Id. at pp. 77-78.  Before the shooter walked ahead of the group, when they initially crossed paths with him, Youngman recognized it was defendant.  Id. at pp. 78-79.  Youngman stated he had seen defendant before in Pine Ridge.  Id. at p. 79.  According to Youngman's testimony, defendant turned around twice toward the group and on the second

3

time he fired a gun hitting T.C.  Id. at pp. 80-83.  Youngman testified the street lights were on when he saw defendant.  Id. at p. 106.  Defendant then continued walking away from the group.  Id. at pp. 84-86.  Youngman identified defendant in the courtroom as the person he saw shoot T.C.  Id. at pp. 89-90.  As with R.O., defense counsel cross-examined Youngman after the government's direct and redirect examinations.  Id. at pp. 92-101, 109-110.

A.R.C. provided testimony at trial in line with R.O. and Youngman.  He observed the shooter's "red shoes[.]"  Id. at p. 115.  Prior to any shooting, as the group initially passed by the shooter, A.R.C. recognized the person as defendant.  Id. at p. 116.  A.R.C. admitted he threw some rocks near defendant and they "[p]ossibly" hit him.  Id. at p. 117.  When defendant was in front of the group, A.R.C. observed defendant turn around twice, firing a gunshot the second time that hit T.C.  Id. at pp. 117-19.  A.R.C. identified defendant in court as the person he witnessed shoot T.C.  Id. at p. 141.  Defense counsel cross-examined A.R.C.  Id. at pp. 126-134.

Federal agents testified about their investigation.  Federal Bureau of Investigation Special Agent Matthew Thatcher testified that during his investigation he examined defendant's bedroom and discovered red shoes.  Id. at p. 217.  Special Agent Thatcher seized the shoes and they were admitted into evidence at trial.  (Docket 89 at pp. 141-43); (Exhibit 65).  Bureau of Indian Affairs Special Agent Theodore Thayer testified about measurements taken of the area where T.C. was shot.  (Docket 89 at pp. 108-110).  Based on those measurements, there was a distance of 226 feet and six inches between a shell

4

casing law enforcement discovered on the street and the estimated location where T.C. was hit. Id.; (Exhibit 7).³

The forensic pathologist who conducted T.C.'s autopsy, Donald Habbe, M.D., testified. He observed a gunshot wound to T.C.'s abdomen. (Docket 89 at p. 197). Dr. Habbe testified T.C.'s significant injury was the gunshot and the damage it did to her aorta and spinal column caused her death. Id. at pp. 197, 202-04. According to Dr. Habbe, T.C.'s injury was consistent with being shot from 50 to 70 yards. Id. at p. 208.

The defense called Paul Michel, O.D., who testified about the eye as a sensory organ and factors influencing eyewitness identification. (Docket 90 at p. 47). Factoring in lighting, distance and movement in a hypothetical situation similar to the setting where T.C. was shot, Dr. Michel testified "identification to the exclusion of all other persons . . . couldn't happen." Id. at pp. 62-63.

In the government's rebuttal case, Jesse Brewer, an Officer with the Oglala Sioux Tribe Department of Public Safety, was called to the stand. During Officer Brewer's testimony, the court admitted into evidence footage from his body camera of the street area when he reported to the scene where T.C. was shot. Id. at pp. 79-82; (Exhibit 88). He testified the recording was not enhanced and accurately showed the street as he saw it that night. (Docket 90 at pp. 82-84).

## ANALYSIS

---

³On cross-examination, the transcript indicates Special Agent Thayer agreed the distance was "26 feet 6 inches," but that is a typographical error. (Docket 89 at p. 112). The court listened to the audio recording of the testimony to confirm this.

5

## I. Rule 29(c) motion

Defendant moved for a judgment of an acquittal at the conclusion of the government's case-in-chief and again after the government's rebuttal. (Docket 90 at pp. 2-3, 93). The court denied both motions. Id. Now defendant renews his Rule 29 motion. (Dockets 101 & 102 at pp. 7-8). He specifically argues the evidence was insufficient to prove the offense of discharge of a firearm during a crime of violence. (Docket 102 at pp. 7-8).

Fed. R. Crim. P. 29(c) gives the district court authority to set aside a guilty verdict and enter an acquittal upon a defendant's post-trial motion. "A district court has very limited latitude in ruling upon a motion for judgment of acquittal." United States v. Baker, 367 F.3d 790, 797 (8th Cir. 2004) (citation and internal quotation marks omitted). "A motion for judgment of acquittal should be granted only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." United States v. Boesen, 491 F.3d 852, 855 (8th Cir. 2007) (citations and internal quotation marks omitted). This standard is very strict, and the court should not overturn a jury verdict lightly. Id.

The district court must enter an acquittal if the evidence presented at trial is insufficient to sustain a conviction. Id. Evidence may be direct or circumstantial. Baker, 367 F.3d at 798. "Evidence supporting a conviction is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Boesen, 491 F.3d at 856 (citation and internal quotation marks omitted). The district court must not weigh the

evidence or assess the credibility of witnesses. Baker, 367 F.3d at 797; see also Boesen, 491 F.3d at 857 ("In ruling on a motion for a judgment of acquittal, the role of the court is not to weigh the evidence . . . but rather to determine whether the Government has presented evidence on each element to support a jury verdict.") (citations and internal quotation marks omitted) (ellipses in original).

The district court "views the entire record in the light most favorable to the government, resolves all evidentiary conflicts accordingly, and accepts all reasonable inferences supporting the jury's verdict." Boesen, 491 F.3d at 856. In short, the court upholds the jury verdict if "drawing all reasonable inferences in favor of the verdict, there is an interpretation of the evidence that would allow a reasonable minded jury to find the defendant[] guilty beyond a reasonable doubt." Id. (citations and internal quotation marks omitted; alteration in original).

The court instructed the jury on both second degree murder and discharge of a firearm during a crime of violence. (Docket 65 at pp. 6-9). Second degree murder consists of three elements: (1) on or about July 20, 2016, defendant unlawfully killed T.C. by shooting her with a gun; (2) defendant acted with malice aforethought; and (3) defendant is an Indian person and the offense took place in Indian country at Pine Ridge, South Dakota. Id. at pp. 6-7. Defendant stipulated to the third element. (Dockets 67 & 88 at pp. 2-3). "The issue here is whether an interpretation of the evidence allows a reasonable-minded jury to find [defendant] guilty, beyond a reasonable doubt, of" second degree murder. See Boesen, 491 F.3d at 856. Because the court concludes that interpretation

7

of the evidence exists, the court finds defendant fails to demonstrate he is entitled to a judgment of acquittal.

The court set forth above the eyewitness testimony presented at trial from R.O., Youngman and A.R.C. See supra at pp. 2-4. Defendant's motion highlights many avenues for impeachment of the eyewitness testimony. (Docket 102 at pp. 2-7). Defense counsel vigorously cross-examined R.O., Youngman and A.R.C. on their testimony and provided the jury with the opportunity to consider whether their testimony was effectively impeached. The court instructed the jury on the credibility of witnesses and impeachment. (Docket 65 at pp. 15-16). The defense's impeachment of the witnesses' testimony, however, is not substantive evidence. Id. Dr. Michel's testimony, specifically his opinion on the hypothetical question defense counsel posed, is substantive evidence, but it is not sufficient for concluding no "interpretation of the evidence allows a reasonable-minded jury to find [defendant] guilty, beyond a reasonable doubt[.]" See Boesen, 491 F.3d at 856. R.O., Youngman and A.R.C. testified they personally observed defendant fire a gunshot that hit and killed T.C. Shooting a gun on a public road at a group of teenagers, fatally injuring one, demonstrates "an intent, at the time of the killing, willfully to take the life of a human being, or[,]" at the least, "an intent willfully to act in callous and wanton disregard of the consequences to human life[.]" (Docket 65 at p. 6). Based on the eyewitness testimony, the first two elements of second degree murder are met because the testimony provides "an interpretation of the

evidence [which] allows a reasonable-minded jury to find [defendant] guilty, beyond a reasonable doubt[.]" See Boesen, 491 F.3d at 856.

The second offense, discharge of a firearm during a crime of violence has two elements: (1) defendant committed the crime of second degree murder as charged, and (2) on or about July 20, 2016, at Pine Ridge, in the District of South Dakota, defendant knowingly discharged a firearm during and in relation to second degree murder as charged. (Docket 65 at p. 8). Both elements are met because of the court's determination above on the elements of second degree murder. See supra at pp. 7-9.

The court denies defendant's Rule 29(c) motion.

## II. First Rule 33(a) motion

Fed. R. Crim. P. 33(a) gives the district court authority to vacate a judgment and grant a new trial in the interest of justice. The decision to grant or deny a Rule 33 motion "is within the sound discretion of the [district] court." United States v. Campos, 306 F.3d 577, 579 (8th Cir. 2002). The court's discretion is both broad and limited. Id. It is broad to the extent the court "can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." Id. (internal quotation marks and citations omitted). "[T]he court need not view the evidence most favorably to the verdict." United States v. Worman, 622 F.3d 969, 977 (8th Cir. 2010); United States v. Lacey, 219 F.3d 779, 783-84 (8th Cir. 2000) (In determining whether to grant a Rule 33 motion, "the court need not view the evidence in the

9

light most favorable to the government, but may instead weigh the evidence and evaluate for itself the credibility of the witnesses.").

The court's discretion is limited to the extent the court must allow the jury's verdict to stand unless it determines a miscarriage of justice will occur. Id.; see also United States v. McCraney, 612 F.3d 1057, 1064 (8th Cir. 2010) ("Where a defendant moves for a new trial on the grounds that the verdict is contrary to the weight of the evidence, the district court should grant the motion if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.") (internal quotation marks and citation omitted); Worman, 622 F.3d at 978 ("A district court will upset a jury's finding only if it ultimately determines that a miscarriage of justice will occur."); United States v. Camacho, 555 F.3d 695, 705 (8th Cir. 2009) ("[A] new trial motion based on insufficiency of the evidence is to be granted only if the weight of the evidence is heavy enough in favor of acquittal that a guilty verdict may have been a miscarriage of justice."); United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980) ("If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.").

Because a motion for new trial based on the weight of the evidence is "generally disfavored," the district court should use its authority to grant a Rule 33 motion "sparingly and with caution." Campos, 306 F.3d at 579 (internal

quotation marks and citations omitted); see also United States v. Bertling, 510 F.3d 804, 808 (8th Cir. 2007) ("A district court should not grant a motion for a new trial simply because it would have reached a different verdict.") (citations omitted).

Similar to defendant's argument underlying his Rule 29(c) motion, he emphasizes the various grounds for finding the eyewitness testimony was impeached. (Docket 102 at pp. 8-11). Defendant, however, fails to identify evidence sufficient to support his motion. Even if the court "would have reached a different verdict[,]" that is not a proper basis for ordering a new trial. See Bertling, 510 F.3d at 808. The court finds defendant does not justify a remedy this court may provide only "sparingly and with caution." Campos, 306 F.3d at 579.

The court does not find "the weight of the evidence is heavy enough in favor of acquittal that a guilty verdict may have been a miscarriage of justice." See Camacho, 555 F.3d at 705. In making its determination, the court weighed the evidence and assessed the credibility of the witnesses. See Lacey, 219 F.3d at 783-84. The court considered the oral arguments of defendant's attorneys at trial, their written submissions and the trial transcripts. The jury was faced with the difficult tasks of weighing the evidence and assessing witness credibility. The jury was in the best position to perform this function. Although the jury's verdict was contrary to defendant's interests, that does not render the verdict a miscarriage of justice. Based in part on the same reasoning already provided, the court finds defendant is not entitled to a new trial on

counts one and two of the indictment under Fed. R. Crim. P. 33(a) for the reasons he argues in his first motion. (Dockets 1, 101 & 102).

The court denies defendant's first Rule 33(a) motion.

## III. Second Rule 33(a) motion

Defendant grounds his second Rule 33(a) motion for a new trial in two arguments. The first is the court erred by not including a specific jury instruction on eyewitness testimony, and the second is government witnesses violated the court's sequestration order. (Docket 103).

### a. Instruction

Defendant contends he is entitled to a new trial because the court failed to give a necessary jury instruction on eyewitness testimony. (Docket 104 at pp. 3-9). Defendant highlights that the Eighth Circuit Model Criminal Jury Instructions include a specific instruction on evaluating the testimony of eyewitnesses. Id. at pp. 4-7. He also points out a significant aspect of the government's case-in-chief was the eyewitness testimony of R.O., Youngman and A.R.C. Id. at pp. 7-9. The government argues there is no error in this situation unless the defense proposes and the court refuses the model jury instruction on eyewitnesses. (Docket 117 at pp. 23-29).

The primary legal principle defendant relies on is not directly on point. "It is reversible error for a trial court to refuse this specific instruction where the government's case rests solely on questionable eyewitness identification." United States v. Mays, 822 F.2d 793, 798 (8th Cir. 1987) (citing United States v. Greene, 591 F.2d 471 (8th Cir. 1979)). Although defendant has shown reasons

for discrediting the eyewitness testimony the government elicited, defendant has not established "the government's case rests solely on questionable eyewitness identification." Id. Defendant demonstrated the conditions on the night T.C. was shot were not ideal for identifying the shooter, but three people testified the person they saw shoot T.C. was defendant. See supra at pp. 2-4. R.O. testified she was "certain" the shooter was defendant, a relative of hers. Id. The court cannot conclude the entire government's case was "questionable eyewitness identification." Mays, 822 F.2d at 798.

Also, the court did not "refuse" an instruction aimed at eyewitness identification. Id. At no point did defendant propose the eyewitness testimony instruction. See Eighth Circuit Model Criminal Jury Instructions, § 4.08 Eyewitness Testimony. The court settled most of the jury instructions during the pretrial conference. (Dockets 53, 64 & 91). The defense did not propose any instructions before or during the pretrial conference. (Docket 91 at p. 58). Before a jury begins deliberations, the court provides supplemental instructions, which parties may propose for the court's consideration during trial as the case unfolds. (Docket 68). The defense proposed no supplemental instructions. (Docket 90 at pp. 18-19). The first time the defense raises this issue is in its second Rule 33(a) motion for a new trial. No violation of the rule enunciated in Mays, 822 F.2d at 798, occurred here.

Under United States v. Grey Bear, "failure to adopt [the defense's] tendered instruction on eyewitness identification[ ]" is not error when "the jury [is] instructed as to issues of credibility," and the "instruction given properly guide[s]

13

the jury's deliberation[.]" 883 F.2d 1382, 1386-88 (8th Cir. 1989). The court instructed the jury on the definition of evidence, credibility of witnesses and impeachment. (Docket 65 at pp. 13-16). These instructions largely mirror those given in Grey Bear, where the jury "was specifically directed to consider the ability of each witness to observe matters on which the witness had testified. It was told to question whether each witness possessed an accurate recollection of these matters." 883 F.2d at 1388. The court finds its instructions "adequately pointed out the relevant considerations to be weighed in gauging eyewitness testimony. The jury was instructed to consider each witness's intelligence, motive, memory, and state of mind, along with the conditions prevailing at the time of observation." Id. The court's instructions "afforded defense counsel ample latitude to argue that the observational capacity of certain witnesses was impaired by their drunken state." Id. Defense counsel capitalized on this during closing statements. (Docket 90 at pp. 109-123); see Grey Bear, 883 F.2d at 1388 (noting defense counsel's ability to challenge eyewitness testimony in closings supported finding no error). This case parallels Grey Bear, and there is even less ground for error here because the defense never proposed and the court never refused an eyewitness instruction.

Mays and Grey Bear confirm there is neither error nor justification for a new trial under Rule 33(a) based on the absence of an eyewitness testimony instruction in this case. See Mays, 822 F.2d at 798; see also Grey Bear, 883 F.2d at 1387-88.

the jury's deliberation[.]" 883 F.2d 1382, 1386-88 (8th Cir. 1989). The court instructed the jury on the definition of evidence, credibility of witnesses and impeachment. (Docket 65 at pp. 13-16). These instructions largely mirror those given in Grey Bear, where the jury "was specifically directed to consider the ability of each witness to observe matters on which the witness had testified. It was told to question whether each witness possessed an accurate recollection of these matters." 883 F.2d at 1388. The court finds its instructions "adequately pointed out the relevant considerations to be weighed in gauging eyewitness testimony. The jury was instructed to consider each witness's intelligence, motive, memory, and state of mind, along with the conditions prevailing at the time of observation." Id. The court's instructions "afforded defense counsel ample latitude to argue that the observational capacity of certain witnesses was impaired by their drunken state." Id. Defense counsel capitalized on this during closing statements. (Docket 90 at pp. 109-123); see Grey Bear, 883 F.2d at 1388 (noting defense counsel's ability to challenge eyewitness testimony in closings supported finding no error). This case parallels Grey Bear, and there is even less ground for error here because the defense never proposed and the court never refused an eyewitness instruction.

Mays and Grey Bear confirm there is neither error nor justification for a new trial under Rule 33(a) based on the absence of an eyewitness testimony instruction in this case. See Mays, 822 F.2d at 798; see also Grey Bear, 883 F.2d at 1387-88.

As an additional basis for denying defendant's argument, any potential error does not rise to the level of plain error. "A defendant's failure to object to an alleged error generally precludes him from asserting the claimed error in a motion for new trial." United States v. McBride, 862 F.2d 1316, 1319 (8th Cir. 1988). During the many opportunities for proposing instructions, "[d]efense counsel must take the initiative in bringing alleged trial error to the court's attention. Counsel cannot stand idly by, permit [an] . . . erroneous matter at trial, and then complain . . . absent plain error." Id.; see United States v. Blade, 336 F.3d 754, 757 (8th Cir. 2003) ("However, Blade did not bring the issue to the district court's attention until after trial, and therefore the issue is subject to plain error review."). "In order to preserve the issue of whether a particular jury instruction should or should not have been issued, an attorney must make a timely objection, explaining the ground upon which the instruction should or should not issue." United States v. Kirkie, 261 F.3d 761, 770 (8th Cir. 2001). "Numerous courts dealing with objections to jury instructions in a post-verdict motion for new trial have applied the familiar plain error standard." United States v. Brandao, 448 F. Supp. 2d 311, 318 (D. Mass. 2006) (collecting cases), aff'd, 539 F.3d 44 (1st Cir. 2008).

"Plain error is an error that is plain and that affects a defendant's substantial rights. Only if the plain error seriously affects the fairness, integrity or public reputation of judicial proceedings will [courts] correct the error." United States v. Murphy, 880 F.3d 988, 990 (8th Cir. 2018) (internal citations and quotation marks omitted). This standard is not met. As stated above, the

15

court provided instructions that sufficiently guided the jury's evaluation of eyewitness testimony. (Docket 65 at pp. 13-16). Defense counsel thoroughly contested the eyewitnesses during its closing statement. (Docket 90 at pp. 109-23). This is not a situation where the absence of an instruction "seriously affects the fairness, integrity or public reputation of judicial proceedings[.]" Murphy, 880 F.3d at 990.

**b. Sequestration**

Defendant claims a new trial is necessary because government witnesses violated the court's order for the sequestration of witnesses. (Docket 104 at pp. 9-10). At the request of the parties, the court ordered the parties to sequester witnesses. (Docket 54). The ruling provided:

> Counsel shall inform their witnesses that during breaks in testimony and once a witness has finished testifying, the witness should not discuss the case with anyone or be present in the courtroom. If a witness is excused, he or she may stay in the courtroom and hear the case but then cannot testify in rebuttal. The government's case agent and defense investigator may be present in the courtroom during the trial.

Id. at p. 2.

Before jury selection began, the court held a hearing with the parties, where the government raised an issue regarding its witness A.R.C. (Docket 87 at pp. 37-41). The government indicated A.R.C. was "emotionally struggling[,]" and requested that A.R.C., Youngman and R.O. be able to spend time together before testifying to support A.R.C. Id. at p. 37. The government stated it "had a very clear conversation with them about them being absolutely prohibited to talk about the facts of this case." Id. At the time, A.R.C. was within the

16

custody of the United States Marshals Service.  Id. at p. 41.  The defense objected to the government's request.  Id. at pp. 38, 40-41.

Because the situation presented an "emotionally struggling young person who [was] a critical witness in the case for both direct and cross[,]" the court ruled A.R.C., Youngman and R.O. were permitted to spend 10 minutes together prior to any of them testifying.  Id. at p. 41.  The court noted "that witnesses who are under subpoena are typically sitting in witness rooms together under a sequestration order and visit about whatever they want to visit about as long as it's not the case."  Id.  The court ruled Thomas Baloun, an investigator with the defense, and the Marshals could supervise the meeting to ensure the witnesses made "no suggestion of any kind, direct or indirect, about any matter connected to the case whatsoever."  Id.

Defendant now argues, for the first time, the witnesses made remarks about the case during the meeting in violation of the court's orders.  (Docket 104 at pp. 9-10).  In an affidavit from Baloun, the defense indicates he observed the witnesses along with Ace Gallagher, who is a witness coordinator with the United States Attorney's Office.  (Docket 104-3 at p. 2).  Baloun's affidavit asserts A.R.C. stated to R.O. and Youngman, "those two FBI agents are saying this is all my fault."  Id.  Baloun's affidavit claims Youngman asked what A.R.C. meant and A.R.C. answered he was talking about the criminal case against defendant. Id. at pp. 2-3.  At that point, Baloun and Gallagher broke up the meeting.  Id. at p. 3.  "[A]s [Baloun] best recalls," while separating the witnesses, Youngman stated to A.R.C., "Don't worry, we got this, Bro."  Id.

17

In defendant's view, this occurrence "unquestionably clouds the subsequent testimony presented at trial by A.R.C." (Docket 104 at p. 10). Defendant argues "A.R.C. had been told he was covered no matter what he might testify to[,]" and "the reliability and credibility of A.R.C.'s testimony is consequently suspect." Id. The government contends no plain error occurred and defendant "has not shown how the statement related to trial testimony[.]" (Docket 117 at p. 31).

Because defendant raises this issue for the first time in a post-trial motion, the court analyzes it through the lens of plain error.[4] See Blade, 336 F.3d at 757; McBride, 862 F.2d at 1319. The court stated above that "[o]nly if the plain error seriously affects the fairness, integrity or public reputation of judicial proceedings will [courts] correct the error." Murphy, 880 F.3d at 990. The court finds no plain error. If the court determined A.R.C. and Youngman made the statements in Baloun's affidavit, it is entirely unclear what affect they had on any trial testimony. Defense counsel had a full opportunity to cross-examine A.R.C. and Youngman on their alleged statements, which undermines the claim that the incident "seriously affects the fairness, integrity or public reputation of judicial proceedings[.]" Id. Even if the court adopts the defense's

---

[4]It is puzzling that the defense waited until now to bring up this matter. While the court is sensitive to the intense moment-to-moment pressures of a jury trial, defense counsel had no trouble raising less consequential matters. Defense counsel notified the court of an alleged interaction between A.R.C. and defendant in the Marshals' holding cell area. (Docket 88 at pp. 102-105). They also let the court know a defense attorney happened to encounter a juror in the stairwell, where the attorney said nothing and the juror said, "I'm sorry, I can't talk to you." Id. at p. 104.

interpretation of the exchange between A.R.C. and Youngman, R.O. never spoke and she went on to provide extensive eyewitness testimony identifying defendant as the person who fatally shot T.C. See supra at pp. 2-3. The court finds defendant fails to establish plain error.

The court denies defendant's second Rule 33(a) motion.

**ORDER**

Based on the above analysis, it is

ORDERED that defendant's Rule 29(c) and first Rule 33(a) motions (Docket 101) are denied.

IT IS FURTHER ORDERED that defendant's second Rule 33(a) motion (Docket 103) is denied.

IT IS FURTHER ORDERED that an order will be entered scheduling the necessary deadlines for defendant's sentencing hearing.

Dated July 13, 2018.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE